STATE OF HAWAI`I, Plaintiff-Appellee,
v.
WENDELL M. IGNACIO, Defendant-Appellant.
No. 28607
Intermediate Court of Appeals of Hawaii.
April 15, 2008.
On the briefs:
Jeffrey A. Hawk for Defendant-Appellant.
Loren J. Thomas, Deputy Prosecuting Attorney, City and County of Honolulu, for Plaintiff-Appellee.

SUMMARY DISPOSITION ORDER
RECKTENWALD, C.J., WATANABE and NAKAMURA, JJ.
Defendant-Appellant Wendell M. Ignacio (Ignacio) appeals from the Judgment of Conviction and Sentence filed by the Circuit Court of the First Circuit (circuit court) on June 18, 2007.[1] Ignacio was charged by written complaint with Burglary in the First Degree (Count I) in violation of Hawaii Revised Statutes (HRS) § 708-810 (1) (c) (1993), and Terroristic Threatening in the First Degree (Count II) in violation of HRS § 707-716(1)(d) (Supp. 2006). A jury acquitted Ignacio on Count I, but found him guilty on Count II. The circuit court sentenced Ignacio to five years of incarceration, with a mandatory minimum of one year and eight months as a repeat offender.
The charges stemmed from an incident on August 17, 2006, in which Ignacio allegedly entered the apartment of his estranged sister Renee Pfeiffer (Renee) and threatened Darnel Kekoa (Darnel), the mother of Renee's four grandchildren. At the time, Renee had a restraining order which prohibited Ignacio from coming within 100 yards of Renee's home.
Ignacio raises the following point of error on appeal: "Ignacio's conviction for terroristic threatening must be reversed where his statements did not constitute `true threats.'
After a careful review of the record and the briefs submitted by both parties, and having given due consideration to the arguments advanced and the issues raised, we resolve Ignacio's point of error as follows:
Considering the evidence in the light most favorable to the State, State v. Richie, 88 Hawai`i 19, 33, 960 P.2d 1227, 1241 (1998), there was substantial evidence supporting the jury's verdict. Renee, who was in the back of the apartment, testified that she heard a loud bang, and then heard Ignacio yelling in the living room, "Where's your fucking grandmother," and "`Tell her to come out, I goin' kill her, or something like that." She overheard Darnel yell, "Get the fuck out of the house[,]" and Ignacio respond, "What, Darnel, you like me fucking hit you?" The location of the yelling moved, and Renee peeked around the side of the building and saw Darnel and Ignacio standing outside the apartment. Renee further testified that Ignacio was holding a pipe in both hands that were raised to his shoulder, and said, "'What, what, fucking Darnel, you like me hit you with this fucking pipe LP and she goes, `Go ahead.'" They continued yelling at each other, and Ignacio eventually left.
Darnel testified that she was in a bedroom at the apartment when she heard a loud bang and saw "red pieces" on the ground outside.[2] She found Ignacio in the living room of the apartment holding a two-foot long metal pipe and yelling at her four-year old daughter, "Where's your fucking grandmother." Darnel yelled at Ignacio, "Get the fuck out, you don't belong here[,]" and Ignacio went outside the apartment, with Darnel following him to make sure he left. The two of them yelled at each other outside the apartment, and Darnel moved towards Ignacio to get him to leave. Ignacio raised the pipe in two hands up by his shoulder and said, "You want me to hit you with this fucking pipe?" Despite being afraid, Darnel told him to go ahead, because "I was raised like that. Never show somebody that you fear them, `cause they're going to hurt you." Ignacio eventually went to his truck and left.
There was substantial evidence that Ignacio's statements about hitting Darnel with a pipe, together with his conduct, constituted a true threat because they were "so unequivocal, unconditional, immediate, and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution." See State v. Valdivia, 95 Hawai`i 465, 477, 24 P.3d 661, 673 (2001) (citing State v. Chung, 75 Haw. 398, 416-17, 862 P.2d 1063, 1073 (1993)) (internal quotation marks and brackets omitted). Viewing the evidence in the light most favorable to the State, Ignacio smashed a fire-extinguisher box, entered the apartment in violation of the restraining order and without permission, holding a two-foot long metal pipe, and angrily confronted a four-year old child before Darnel intervened. Ignacio also held the pipe in both hands and raised it to his shoulder when confronting Darnel outside the apartment. In these circumstances, the jury could find that Ignacio's statements and conduct were not equivocal, but rather that they conveyed Ignacio's immediate and unconditional threat to hit Darnel with the pipe.
Ignacio suggests that his statements about the pipe were not threats, because they "were actually questions[.]" However, the jury, which is the "sole judge" of credibility, State v. Quitog, 85 Hawaii 128, 145, 938 P.2d 559, 576 (1997), had the opportunity to hear the voice inflections of the witnesses who testified about these statements. See State v. Thompson, 713 N.E.2d 456, 468 (Ohio Ct. App. 1998) ("The fact-finder can hear and see as well as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witness and the examiner, and watch the witness's reaction to exhibits and the like."). When Ignacio's statements are viewed in light of the other evidence in the case, there was substantial evidence supporting the conclusion that the statements were threats, not questions. Cf. O'Donnell v. Westinghouse Elec. Corp., 528 A.2d 576, 580 (Pa. 1987) (jury should have been instructed on contributory negligence despite ambiguities in the testimony; jury could properly resolve ambiguous testimony by "interpreting this passage in light of all the evidence, . . . [m]oreover, the fact-finding process inherently involves an infinite number of factors which are purely intangible and subjective in essence, such as the inflection in a witness's voice, apparent to a juror, but imperceptible on a printed record before us.").
Accordingly, the Judgment of Conviction and Sentence filed by the Circuit Court of the First Circuit on June 18, 2007 is hereby affirmed.
NOTES
[1] The Honorable David W. Lo presided.
[2] Darnel testified that she later observed that a fire extinguisher box, which had been intact when she arrived at the apartment several hours earlier that morning, had been broken. A police officer who responded to the scene observed a fire extinguisher box that had been "shattered," with pieces on the ground.